710 F.2d 721
 FLORIDA FARMWORKERS COUNCIL, INC., 1975 East Sunrise Blvd.,
# 850, Ft. Lauderdale, Florida 33304, Petitioners,
v.
Ray MARSHALL, Secretary, United States Department of Labor,
200 Constitution Avenue, N.W., Washington, D.C.
20210, Respondent.
 No. 80-5909.
 United States Court of Appeals,
Eleventh Circuit.
 July 28, 1983.
 
 James L. Feldesman, Washington, D.C., for petitioners.
 Carin Ann Clauss, Sol. of Labor, Howard L. Robinson, Nathaniel Baccus, III, Associate Sol., Jonathan H. Waxman, William H. DuRoss, III, U.S. Dept. of Labor, Washington, D.C., for respondent.
 Petition for Review of an Order of the United States Department of Labor.
 Before GODBOLD, Chief Judge, HENDERSON and CLARK, Circuit Judges.
 CLARK, Circuit Judge:
 
 
 1
 Petitioner Florida Farmworkers Council, Inc. (FFC)[1] is a Florida nonprofit corporation which operates federal, state, and other programs for low income farmworkers. In 1974 and 1975, FFC received two major grants from respondent Department of Labor (DOL) to provide services to migrant and seasonal farmworkers. DOL awarded Grant No. 40220 to FFC under Title III-B of the Economic Opportunity Act of 1964 (EOA), 42 U.S.C. sec. 2701 et seq.,[2] and awarded Grant No. 99-5-326-31-44 under section 303 of the Comprehensive Employment and Training Act of 1973 (CETA), 29 U.S.C. sec. 873 et seq.[3] (R. 83, p. 7).
 
 
 2
 DOL employed independent certified public accountants to conduct audits of FFC's 1974 and 1975 operations. The audit findings, disclosed in reports on April 30, 1976, showed that FFC had used grant funds improperly. The findings questioned certain accounting practices and procedures of FFC, suggested that various expenditures were improper, and demonstrated that FFC had used CETA funds for administrative expenses in violation of DOL regulations. FFC submitted documents in response to the audit report. On May 25, 1977, a DOL grant officer issued final decisions and comments on the audits of both grants. Specific expenditures by FFC were disallowed and FFC was ordered to return money to both the DOL and the Mississippi Delta Council, from which it had borrowed funds. On June 3, 1977, the grant officer notified the director of the FFC that the Assistant Secretary for Employment and Training requested that FFC be debarred from receiving grants or contracts from the DOL for two years. (Exhibit 3). The grant officer recommended debarring FFC because the material contained in the audits of the two grants showed "substantial mismanagement of federal funds to a degree justifying a Department-wide debarment for a period of two years." (Exhibit 3).
 
 
 3
 In separate letters dated June 14, 1977, FFC notified the Secretary of DOL that it wished to appeal all three decisions of the grant officer. In the letter noting the appeal of the debarment, FFC's attorney stated that the hearing regarding debarment of FFC should be combined with the hearings on the audits and governed by
 
 
 4
 the Joint Stipulation for Dismissal between FFC and the Labor Department which accompanied the District Court for the District of Columbia's May 3, 1977, Order of Dismissal of Florida Farmworkers Council, Inc. v. Marshall (C.A. No. 76-2326). In the Joint Stipulation it was agreed that the appeal contained in this letter along with the appeal from the decisions involving Grant Nos. 40220 and 99-5-326-31-44, will be combined into a single proceeding and will be governed by the Labor Department procedures for debarment found at 41 CFR Part 29-60.
 
 
 5
 (Exhibit 6b). On July 20, 1977, FFC filed its complaint which formally commenced the hearing procedure.
 
 
 6
 After a complete hearing in which both parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence and testimony, and to submit briefs, the administrative law judge (ALJ) issued a recommended decision and order on January 26, 1978. The ALJ first discussed the debarment of FFC. The grant officer had informed FFC that it would be debarred, but had not indicated what his authority for debarring petitioner FFC was. In the 1977 amendments to the regulations governing migrant and seasonal farmworkers, provision was made for "suspension and debarment" of grantees, 29 C.F.R. sec. 97.267 (1977).[4] The amended regulations set forth both procedures and standards for debarring a grantee. Comments accompanying the new regulations stated:
 
 
 7
 Section 97.266 Termination of a grant, has been revised by deleting paragraph (b) of the proposed regulation, and putting it in a new section 97.267, Suspension and debarment. This new section provides that the Secretary may suspend a grantee from being considered for section 303 funds when there is adequate evidence of illegal use of program funds and provides that DOL Procurement Regulations will be followed if suspension or debarment is proposed.
 
 
 8
 * * *
 
 
 9
 Accordingly, 29 CFR Parts 94 and 97 are revised, effective February 7, 1977, for the operation of Fiscal Year 1977 grants ....
 
 
 10
 42 Fed.Reg. 1656-57 (1977). From this language, the ALJ concluded that there was no intention to make section 97.267 retroactive and therefore that section did not apply to FFC's debarment.
 
 
 11
 The ALJ concluded, however, that DOL did possess legal authority to withhold federal financial assistance. This authority was described in both the Act and the original 1974 regulations to facilitate the implementation of Title III, Section 303(a) of CETA. The Act provided, in part:
 
 
 12
 (d) Whenever the Secretary determines, after notice and opportunity for a public hearing, that any prime sponsor ... is--
 
 
 13
 * * *
 
 
 14
 (2) incurring unreasonable administrative costs ...
 
 
 15
 * * *
 
 
 16
 (4) otherwise materially failing to carry out the purposes and provisions of its chapter;
 
 
 17
 the Secretary shall revoke the prime sponsor's plan for the area, in whole or in part, and to the extent necessary and appropriate shall not make any further payments to such prime sponsor under this chapter....
 
 
 18
 29 U.S.C. sec. 818(d) (1975) (repealed 1982).[5] Regulations governing the Secretary's investigation, hearing, and determination of questions of noncompliance provided:
 
 
 19
 (f) Content of orders. The final decision may provide for suspension or termination of, or refusal to grant or continue Federal financial assistance, in whole or in part, under the program involved in accordance with the Act ...
 
 
 20
 29 C.F.R. sec. 98.48(f) (1975). The ALJ concluded that these regulations, the notice given to FFC, and the full hearing met the standards set forth in Gonzalez v. Freeman, 334 F.2d 570 (D.C.Cir.1964), for debarment by a federal agency.
 
 
 21
 The ALJ next proceeded to review the evidence uncovered in the audits. The DOL Grant No. 40220 was reviewed first. Among the discrepancies discussed was a loan from the Mississippi Delta Council to FFC in the amount of $89,333, which should have been repaid by FFC upon receipt of its 1975 CETA funds. FFC had hoped that DOL would repay this loan itself, but no evidence suggested that DOL had undertaken that obligation. Numerous other expenses under Grant No. 40220 had also been disallowed by the grant officer and were reviewed by the ALJ.
 
 
 22
 The largest single sum disallowed under Grant No. 99-5-326-31-44 was money paid for administrative expenses of programs funded by other agencies. FFC received money from the Department of Health, Education, and Welfare (HEW) for indirect costs which had already been paid out of DOL funds. Under CETA regulations, direct and indirect administrative costs were supposed to be limited to those necessary to operate the program funded by the DOL grant. 29 C.F.R. sec. 97.256 (1975). Thus, for example, salaries chargeable to the CETA grant should not have exceeded the pro rata share attributable to section 303 functions.
 
 
 23
 FFC argued that because the budget it submitted to DOL provided for a fixed amount for salaries, it was not subject to the limitation set forth in section 97.259(g)(5) (1975). Numerous other costs under Grant No. 99-5-326-31-44, particularly travel expenses, were disallowed by the grant officer and subsequently reviewed by the ALJ.
 
 The ALJ concluded that:
 
 24
 The costs disallowed demonstrate substantial mismanagement of federal funds, establish that Petitioner has incurred unreasonable administrative costs, otherwise show that Petitioner has materially failed to comply with the Regulations, and that Petitioner is in default in its performance of assurances given by it pursuant to the Act and the Regulations.
 
 
 25
 (Exhibit 83, at 58). The ALJ recommended that FFC be ordered to: (1) return approximately $15,000 to DOL; (2) return the $89,333 borrowed from the Mississippi Delta Council; (3) reimburse Grant No. 40220 for costs disallowed, totaling $171,846.22; and (4) reimburse Grant No. 99-5-326-31-44 for costs disallowed, totaling $83,590.76.
 
 
 26
 The ALJ concluded that the debarment stated in the June 3, 1977 letter was improper because it was based on the amended section 97.267 of the regulations which was not effective until February 7, 1977. Finding that FFC had blatantly failed to follow proper fiscal policies and concluding that prior regulations permitted an order prohibiting continued federal assistance, the ALJ recommended that FFC not receive additional federal funds until it had made all the recommended reimbursements and demonstrated to the Secretary that it would fully comply with the Act and the corresponding regulations.
 
 
 27
 FFC and the grant officer filed exceptions to the ALJ's recommended decision with the Secretary. The grant officer excepted to the conclusion that debarring authority under 29 C.F.R. 97.267 (1977) was limited to acts involving expenditures after February 7, 1977. FFC excepted to the ALJ's decision to disallow certain costs.
 
 
 28
 In a decision issued on September 17, 1980, the Secretary adopted the findings and recommendations of the ALJ concerning the cost disallowances. The Secretary ordered FFC to return the following amounts: (1) to the DOL, $15,481; (2) to the Mississippi Delta Council, $89,333; (3) to EOA Grant No. 40220, $171,846.22; and (4) to CETA Grant No. 99-5-326-31-44, $83,590.76. The Secretary also stated his opinion, for the guidance of the Assistant Secretary,[6] that FFC could be debarred for its actions. The Secretary agreed with the grant officer that the language relied on by the ALJ, "effective February 7, 1977 for the operation of Fiscal Year 1977 grants," (Exhibit 130, at 4, n. 1), did not unequivocally demonstrate that such regulations were not to apply to acts which occurred prior to February 7, 1977.
 
 
 29
 The grant officer had indicated, in a memorandum filed June 12, 1978, that much of the revised Part 97, Subpart C of the Farmworkers Program Regulations did not pertain to the operation of Fiscal Year 1977 grants. For example, various sections concerned the allocation of funds or eligibility for funds, processes which had already been completed for Fiscal Year 1977 grants. The grant officer contended that the phrase "for the operation of Fiscal Year 1977 grants" was intended to alert the recipients of those grants that in the operation of their grant programs DOL required them to follow the new amendments beginning February 7, 1977.
 
 
 30
 The grant officer had also contended that the ALJ misstated the issue as one of retroactivity. The real issue, according to the grant officer, was whether the new section authorizing debarment could be used in reviewing actions occurring before its effective date. The grant officer found the time the facts occurred relevant only to the issue of whether the acts were recent enough to support a conclusion of present or future responsibility.
 
 
 31
 The Secretary found the grant officer's explanation of the new regulations persuasive and concluded that the debarment provisions were applicable to FFC. The Secretary further found that debarment of FFC was amply justified by "the illegal diversion of funds, deliberate falsification, flagrant disregard of fiscal responsibility, material failure to comply with applicable regulations, and substantial mismanagement of federal funds." (Decision of the Secretary of the Department of Labor, September 17, 1980, at 12).
 
 
 32
 In a memorandum opinion dated September 26, 1980, the Assistant Secretary adopted the Secretary's findings and conclusions with respect to debarment. The Assistant Secretary agreed that debarment was legally proper and fully justified by the FFC's conduct.
 
 
 33
 On October 29, 1980, FFC filed a complaint in the United States District Court for the District of Columbia challenging the September 17, 1980 cost disallowances decision by the Secretary and the September 26, 1980 debarment decision by the Assistant Secretary. On November 17, 1980, FFC petitioned this court for review of the same actions. In the initial petition, FFC requested this court to defer action until the United States District Court for the District of Columbia determined whether jurisdiction existed in the Fifth Circuit pursuant to 29 U.S.C. sec. 819(a) (1975) (repealed 1982).[7] On March 13, 1981, the District Court for the District of Columbia granted DOL's motion to dismiss for lack of jurisdiction, holding that the Fifth Circuit would have jurisdiction. On May 6, 1981, FFC filed a motion to stay further proceedings pending disposition of the matter in the United States Court of Appeals for the District of Columbia. FFC did not file its brief with this court by the due date of May 19, 1981.
 
 
 34
 On October 21, 1981, the United States Court of Appeals for the District of Columbia vacated and remanded the decision of the district court dismissing the FFC's claims based on its administration of grants under the Economic Opportunity Act. The appellate court concluded that the District Court for the District of Columbia had jurisdiction to review final agency actions under the Economic Opportunity Act. See 5 U.S.C. sections 702, 703 (1976); 28 U.S.C. sec. 1391(e) (1976). The district court was ordered to stay further action pending the resolution of the case in this court:
 
 
 35
 Although appellant's claims arise under two separate statutes, EOA and CETA, all of the claims appear to emanate from a single decision by the Department of Labor; appellant's claims thus present several common questions of fact and law. Because action by the Eleventh Circuit may be dispositive of both the claims arising under CETA and related claims arising under EOA, we hereby instruct the District Court to stay further action on appellant's EOA claims pending decision by the Eleventh Circuit.
 
 
 36
 Florida Farmworkers Council, Inc. v. Raymond J. Donovan, Secretary, United States Department of Labor, 672 F.2d 893 (D.C.Cir.1981).
 
 Jurisdiction
 
 37
 Our first consideration in this appeal must be the extent of our jurisdiction to resolve all the issues raised in the three agency decisions. Subject matter jurisdiction is conferred on this court for review of a decision of the Secretary of Labor sanctioning a recipient of funds under CETA by 29 U.S.C. sec. 817 (1978) (repealed 1982). The Secretary urges that this court has jurisdiction to decide all questions relating to the sanction including claims arising under the EOA grant. FFC flatly contends that the issues arising from the EOA grant are not before this court.[8]
 
 
 38
 The difficulty with treating the EOA and CETA issues in this case in separate judicial proceedings is obvious. The parties agreed to review the administrative cost disallowances and recommendations for debarment in a single hearing before an administrative law judge. The parties further agreed that the hearing would be governed by DOL procedures for debarment. The hearing was held according to the parties' stipulation, resulting in one lengthy record in which the various issues are dealt with interchangeably. The United States Court of Appeals for the District of Columbia has concluded that it cannot have jurisdiction over the CETA claims because that jurisdiction is exclusively vested by 29 U.S.C. sec. 817(a) (1978) (repealed 1982) in this court. Thus, we are the only court which may proceed to resolve the issues on appeal in one proceeding.
 
 
 39
 We conclude that the EOA claims encompassed in this appeal are properly before this court as matters ancillary to the CETA claims. By considering the EOA claims with the CETA claims, this court will fulfill the purpose of ancillary jurisdiction by promoting the economical and expeditious administration of justice. Texas Employers' Insurance Association v. Felt, 150 F.2d 227 (5th Cir.1945). To permit the FFC to pursue its EOA claims in another court would require that court to study the exact same record which this court has reviewed. We thus proceed to review both the CETA cost disallowances and the EOA cost disallowances.
 
 The CETA Cost Disallowances
 
 40
 FFC challenges only one CETA cost disallowance by DOL. DOL calculated that FFC had overcharged DOL's CETA grant $70,891, for direct and indirect administrative costs actually incurred in connection with other grants. For example, FFC had paid full salaries for individuals out of CETA funds when those individuals were only spending part of their time on CETA matters.
 
 
 41
 FFC's fundamental argument is that the CETA regulations provided that a recipient's first priority of compliance was to comply with its grant budget. 29 C.F.R. sec. 97.231 (1975). FFC argues that this grant budget is a binding contract between grantor and grantee and that it supersedes any regulations. In this case, FFC contends that the budget provided for the $70,891 in costs which were disallowed. FFC next contends that testimony before the ALJ by a DOL employee demonstrated that DOL had a practice of permitting recipients to charge CETA for the full amounts of items, rather than allocating a pro rata share for actual CETA expenses. Finally, FFC argues that even if the regulations provided that FFC should have allocated costs, the ambiguity in the contract between FFC and DOL should be construed in favor of FFC. FFC cites cases in which a contractor's method of charging indirect costs was first approved, and later disapproved. In one such case, the Court of Claims allowed the contractor to use the original method until it was notified that it was improper. Litton Systems, Inc. v. United States, 449 F.2d 392 (Ct.Cl.1971).
 
 
 42
 An evaluation of FFC's contentions first requires a review of the governing regulations. Two regulations primarily discuss the issue of costs allocations. First, the CETA regulations contain an explicit provision governing the charges to be made for salaries for employees who performed both CETA and non-CETA functions:
 
 
 43
 Prorating Salaries. In cases where an individual performs functions under several grants, their time shall be prorated among the different grants and the portion of the salary charged to the section 303 grant shall not exceed the percentage of time spent performing section 303 functions.
 
 
 44
 29 C.F.R. sec. 97.259(g)(5) (1975). Another regulation specifies what constitutes allowable costs:
 
 
 45
 Administration costs. Administration costs shall be limited to those necessary to effectively operate the program. Such costs include overall program administration as well as program activity administration costs incurred by prime sponsors, subgrantees, and contractors. Administrative costs shall not generally exceed 20 percent of the total planned costs for the entire grant, unless such additional costs have been approved in writing by the Secretary.
 
 
 46
 29 C.F.R. sec. 97.256(d)(1) (1975). CETA regulations also incorporated by reference the following provisions of Federal Management Circular (FMC) 74-4:
 
 
 47
 C. Basic guidelines.
 
 
 48
 1. Factors affecting allowability of costs. To be allowable under a grant program, costs must meet the following general criteria:
 
 
 49
 * * *
 
 
 50
 f. Not be allocable to or included as a cost of any other federally financed program in either the current or a prior period.
 
 
 51
 * * *
 
 
 52
 2. Allocable costs.
 
 
 53
 a. A cost is allocable to a particular cost objective to the extent of benefits received by such objective.
 
 
 54
 FMC 74-4, Fed. Grants Mgmt. Handbook, Appendix I, incorporated in 29 C.F.R. sec. 98.12(a)(ii) (1975).
 
 
 55
 These provisions demonstrate the consistent federal policy of permitting only those costs necessary to the operation of a program to be billed to the grant funding that program. The ALJ presented the following summary of costs which were charged to the CETA grant but were spent for expenses incurred in non-CETA operations:
 
 
 56
 1. Salaries paid in full by the
 CETA Grant which should be
 allocated to other programs as
 required by applicable Regulations $125,536
2. Fringe Benefits 15,115
3. a) Administrative Office
 Total 29,796
 CETA Allocation 11,918
 Charged CETA 19,753 7,835
 b) Outreach Offices Charged
 100% to CETA; allocation to
 other programs 25,500
 c) Utilities, repairs, cleaning
 charged 100% to CETA;
 allocation to other programs 8,281 41,616
 ----------------
4. Other Administration costs
 charged 100% to CETA;
 allocation to other programs 8,335
5. a. Payments from indirect cost
 Pool 66,228
 CETA allocation 26,491
 ------ --------
 190,602
 b. Lease hold improvements -26,491
 Paid from indirect cost
 pool; 20,009
 CETA allocation 8,004 - 8,004
 --------
 156,107
 However, certain of the
 indirect costs were questionable
 that were paid from the
 indirect cost pool that should
 have been allocated to CETA.
 Total per audit 64,654
 CETA allocation 25,862
 Total-items 1-5 156,107
 CETA allocation of indirect
 costs per audit 25,862
 --------
 $181,969
 
 
 57
 The ALJ concluded that the CETA grant was improperly charged $181,969 of direct and indirect costs. The audit report, however, had questioned only $70,891 of those costs, and the grant officer had disallowed that amount. The ALJ found the record supported the conclusion that the costs were improperly charged to the CETA grant and affirmed the grant officer's disallowance of $70,891.
 
 
 58
 On appeal, FFC does not challenge the calculations. FFC also does not contend that these funds were not spent for non-CETA functions. Instead, FFC's sole argument concerning this $70,891 sum is that these administrative costs for non-CETA operations were properly charged to the CETA grant. The focus of FFC's argument is that the budget approved by DOL for the program funded by the CETA grant supersedes any regulations that contradict that budget. The only support for FFC's position is the preliminary language of the CETA regulation which provides that one of the responsibilities of a CETA recipient is to comply with "plans and assurances." 29 C.F.R. sec. 97.231 (1975). FFC argues that its budget was a "plan" and that FFC's first priority was to comply with that "plan."
 
 
 59
 FFC's argument ignores the fact that the "Assurances and Certifications" in the grant incorporate by reference the CETA regulations and thus limit the general administrative expenses billable to the CETA grant to those actual expenses incurred for the CETA program. Nothing in the budget itself or the governing regulations suggests that approval of a recipient's budget carries with it permission to disregard all governing regulations. Indeed, the provision cited by FFC for its proposition that the first priority is to comply with the "plan" is preceded by a regulation requiring a grantee to comply with applicable regulations, thus encompassing salary proration and FMC 74-4. 29 C.F.R. sec. 97.230 (1975).[9]
 
 
 60
 FFC urges that in any event it should not have to repay the cost disallowances to the grant because FFC's allocation approach was consistent with the actual policy of DOL. FFC, however, fails to cite any evidence in the record supporting its contention that DOL permitted CETA recipients to charge CETA grants for the costs incurred in operating other programs. The only evidence relied on by FFC for its contention is the testimony of a DOL official who stated that at one time DOL had permitted EOA recipients to use EOA funds under a "core concept," billing EOA for administrative costs generally incurred. This official further testified, however, that DOL was moving to an allocation of funds on all expenses, rather than the core concept. The official did not testify that CETA grantees were ever permitted to charge excess administrative costs for other projects to CETA grants or that any permission had been given to FFC to do so.
 
 
 61
 Finally, FFC cites prior cases which have permitted a contractor whose method of cost allocation was approved to proceed under that manner of cost allocation without penalty until the recipient is informed of the change in policy. The facts of the present case do not fall within those boundaries because FFC has failed to demonstrate that the DOL ever initially approved of FFC charging CETA grants more than its pro rata share of administrative expenses.
 
 
 62
 We find the Secretary's affirmance of the $70,891 cost disallowance by the ALJ supported by the terms of FFC's agreements with DOL, the governing regulations, and the record below. We thus affirm the order to FFC to reimburse Grant No. 99-5-326-31-44 the full amount of $83,590.76.
 
 EOA Cost Disallowances
 
 63
 Although FFC briefed the issue of CETA allocation of costs on this appeal, FFC chose not to brief any of the issues related to costs disallowances of EOA funds, including Grant No. 40220. This decision appears to have been a tactical choice of FFC, which has continually urged that jurisdiction over the EOA cost disallowances is only proper in the United States District Court for the District of Columbia. As was discussed above, we have ancillary jurisdiction of this matter and will proceed to review the EOA costs disallowances so that FFC will receive a full review of all its claims in a single forum. We note that the extensive record already compiled in this case, with transcript from 9 days of hearings and over 130 exhibits, precludes any necessity for fact-finding before a district court. Nor does FFC suggest that additional evidence or testimony would aid a review of the EOA cost disallowances.
 
 
 64
 The EOA costs disallowances are most easily summarized in a chart:
 
 
 65
 Item* Amount Explanation
----------- ------------ ----------------------------------------------------
 Grant No. 40220 Funds
-------------------------
A-2 $ 4,800.00 Insurance Expenditure--Check was
 ---------------------
 drawn for insurance, but no policy
 was issued.
B-12 6,926.00 Grocery Store Operation--Purchase of
 -----------------------
 truck which was not approved by
 DOL.
 1,611.00 Improper expenditure for truck equipment.
 1,395.00 Funds FFC improperly allowed its
 504.00 grantee to incur without financial
 accountability.
 1,922.01 Expenses incurred after termination
 234.00 of subcontract by FFC with Farm
 231.21 Workers Harvesting, Inc.
B-2 306.00 Program Travel--Excess local mileage
 --------------
 costs.
B-3 373.00 Travel--First class air fare improperly
 ------
 charged.
B-7 618.00 Board Travel--Excess mileage claimed
 ------------
 by board members.
B-9 $112,043.00 Migrant Day Care Contract Services--
 ----------------------------------------------------
 Numerous improper payments to
 daycare subcontractor.
B-13 40,883.00 Excess Costs--Expenditures which
 ------------
 exceed FFC's budget under Grant No.
 40220 and which should be paid by
 FFC from non-DOL funds.
 ------------
 $171,846.22 To be repaid by FFC to Grant No.
 40220.
 Other EOA Funds
-------------------------
A-4 $ 10,681.00 **Money contained in the Credit
 Union Revolving Fund which was
 transferred from FFC to DOL (this
 amount to be repaid to DOL).
A-7 89,333.00 **Loan From Mississippi Delta Council
 which was to be repaid by FFC
 (this amount to be repaid to Mississippi
 Delta Council).
-------------------------
 
 
 
 *
 These identifying numbers refer to the number of the exhibit which
 documentted the expenditure in the hearing before the ALJ.
 **The Credit Union Revolving Fund and the loan from the Missippi Delta
 Council were not financed by Grant No. 40220, but stemmed from other EOA
 funds. The audit reviewing Grant No. 40220 encompassed these funds.
 We have exhaustively reviewed the ALJ's findings on each cost disallowed, the subsequent exceptions made by the parties to those disallowances, the explanatory briefs of the parties, and the ultimate decision of the Secretary (who adopted the ALJ's recommendations on these costs disallowances). Where there was any need for clarification, we also reviewed the record of the hearing before the ALJ and the original audit reports. After this extensive review, we conclude that the evidence was more than sufficient to support the Secretary's findings and conclusions.
 The various expenditures comprising the $171,846.22 to be repaid by FFC to Grant No. 40220 were simply improper charges to the grant. The record presents more than adequate factual support for the conclusion that those expenses were either unreasonably incurred or unreasonably charged to Grant No. 40220.
 The amount of $10,681 to be repaid by FFC to DOL represents the funds which were in the Credit Union Revolving Fund. This fund was originally established with Title III, Part B EOA grants prior to Grant No. 40220. In the Delegation of Authorities to the Secretary of Labor dated June 29, 1973, the property, funds, and records of Title III, Part B programs were transferred to the Secretary. With this delegation, the Credit Union Revolving Fund was transferred to the Secretary. The ALJ noted that there was no significant activity in the fund after November 30, 1973. FFC remained the custodian of the fund, but the Secretary had the authority to order the fund returned to DOL. In FFC's exceptions to the ALJ's recommendations, FFC failed to demonstrate that this conclusion was incorrect.
 The loan from the Mississippi Delta Council of $89,333 was originally authorized by DOL under Grant No. 40220. DOL authorized FFC to borrow this sum on January 30, 1975, with instructions to repay the amount within thirty days. In a letter dated February 23, 1975, DOL advised FFC that the loan was to be repaid upon receipt of its CETA Fiscal Year 1975 grant. FFC subsequently requested that it not be required to repay the loan. The ALJ concluded, however, and the record indicates, that FFC was never informed that it could retain the money and have the loan forgiven. FFC has failed to point to any evidence supporting its contention that it was excused from repayment.
 We affirm the Secretary's order that FFC repay $171,846.22 to Grant No. 40220, $10,681 to DOL directly, and $89,333 to the Mississippi Delta Council.
 Debarment
 By letter dated June 3, 1977, an assistant secretary of DOL informed FFC that it would be debarred beginning in July of 1977, if a hearing was not requested. FFC made a timely request for a hearing, which stayed the debarment. A final order debarring FFC did not issue until September 26, 1980. That debarment order stated that FFC would be debarred from "receiving any grants, contracts, or other final assistance from the U.S. Department of Labor for a period of two years from the date of this decision." (Exhibit 132). Thus, by its own terms, the debarment officially ended on September 27, 1982. FFC's attorney confirmed, at oral argument, that there is no outstanding debarment order against FFC.
 FFC argued before this court that the issue is not moot because FFC must now operate under the stigma of having been officially debarred by DOL. FFC also argued that mootness is precluded because the issue is capable of repetition yet evading review. FFC stated explicitly, however, that it did not mean to imply that the incident was capable of repetition with FFC. Instead, FFC urged this court to proceed to resolve the issue of DOL's authority to debar so that other groups would not have the possibility of debarment absent a regulation expressly so providing.
 This court has previously recognized that, in the absence of a class action, the exception to mootness for issues capable for repetition yet evading review is limited to cases in which: (1) the challenged action is too short in duration to be fully litigated prior to its cessation or termination, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. Morgan v. Roberts, 702 F.2d 945, 947 (11th Cir.1983), citing Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350, 352 (1975). By its own admission, FFC does not meet the second criteria.
 We do not agree with FFC that some ephemeral stigma which it must bear is sufficient to preclude mootness. First, it is difficult to discern what additional stigma is created, by our declining to address this issue, beyond the prejudice that will ensue from our affirmances of the many costs disallowances. Second, FFC's statements to this court that it has continued to receive substantial federal funds suggest that whatever stigma exists is not crippling FFC's activities. We thus conclude that the debarment issue presents no real case or controversy to this court and must be declared moot.
 AFFIRMED IN PART AND DISMISSED IN PART.
 
 
 [1]
 Florida Farmworkers Council, Inc. was previously known as Community Action Migrant Program and was frequently identified as CAMP during the course of the proceedings below
 
 
 [2]
 The relevant portions of the EOA as amended by the Economic Opportunity Amendments of 1972, 42 U.S.C. sec. 2701 et seq. (1973), were repealed on August 13, 1981 by Pub.L. 97-35, Title VI, sec. 683(a), 95 Stat. 519
 
 
 [3]
 CETA, enacted in 1973, replaced several EOA programs including the III-B EOA program. Section 303 of CETA was the counterpart to III-B of the EOA. (Petitioner's Brief at 6)
 The relevant portions of CETA, 29 U.S.C. sec. 873 et seq., were repealed on October 13, 1982 by Pub.L. 97-300, Title I, sec. 184(a)(1), 96 Stat. 1357.
 
 
 [4]
 The amended regulation provided:
 Sec. 97.267 Suspension and debarment.
 In situations where there is adequate evidence that there has been substantial mismanagement of program funds under the Act, the Secretary may determine that a grantee be suspended from consideration for CETA section 303 funds. If suspension or debarment is proposed, the procedures set forth in the DOL Procurement Regulations, 41 CFR Subpart 29-1.6 will be followed.
 
 
 [29]
 C.F.R. sec. 97.267 (1977)
 
 
 [5]
 This subsection provided in full:
 (d) Whenever the Secretary determines, after notice and opportunity for a public hearing, that any prime sponsor designated to serve under this chapter is--
 (1) maintaining a pattern or practice of discrimination in violation of section 983(1) or section 991(a) of this title or otherwise failing to serve equitably the economically disadvantaged, unemployed, or underemployed persons in the area it serves;
 (2) incurring unreasonable administrative costs in the conduct of activities and programs, as determined pursuant to regulation;
 (3) failing to give due consideration to continued funding of programs of demonstrated effectiveness including those previously conducted under provisions of the Manpower Development and Training Act of 1962 and parts A, B, and E of title I of the Economic Opportunity Act of 1964; or
 (4) otherwise materially failing to carry out the purposes and provisions of this chapter;
 the Secretary shall revoke the prime sponsor's plan for the area, in whole or in part, and to the extent necessary and appropriate shall not make any further payments to such prime sponsor under this chapter, and he shall notify such sponsor to return to him all or part of the unexpended sums paid under this chapter during that fiscal year.
 29 U.S.C. sec. 818(d) (1975) (repealed 1982).
 
 
 [6]
 The Assistant Secretary for Administration and Management is the individual authorized to invoke debarment under CETA. See 29 C.F.R. sec. 97.267, 41 C.F.R. sec. 1.604 (1977)
 On June 3, 1977, the Assistant Secretary informed FFC that a two-year debarment would be imposed unless a hearing was requested. FFC requested the hearing, which was consolidated with the hearings on the cost disallowances. The Secretary set forth his views on debarment in his opinion governing the cost disallowances for the "guidance" of the Assistant Secretary for Administration and Management.
 
 
 [7]
 Judicial review was provided for as follows:
 (a) If any prime sponsor is dissatisfied with the Secretary's final action with respect to the approval of its comprehensive manpower plan submitted under section 815 or section 816 of this title or with his final action under section 818 of this title, such prime sponsor may, within sixty days after notice of such action, file with the United States court of appeals for the circuit in which the prime sponsor is located a petition for review of that action. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Secretary. Thereupon the Secretary shall file in the court the record of the proceedings on which he based his action, as provided in section 2112 of Title 28.
 Findings of fact
 (b) The findings of fact by the Secretary, if supported by substantial evidence, shall be conclusive; but the court, for good cause shown, may remand the case to the Secretary to take further evidence, and the Secretary may thereupon make new or modified findings of fact and may modify his previous action, and shall certify to the court the record of the further proceedings. Such new or modified findings of fact shall likewise be conclusive if supported by substantial evidence.
 Further review by United States Supreme Court
 (c) The court shall have jurisdiction to affirm the action of the Secretary or to set it aside, in whole or in part. The judgment of the court shall be subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of Title 28.
 29 U.S.C. sec. 819 (1975) (repealed 1982).
 
 
 [8]
 This case presents a somewhat peculiar posture because if this court declines to address the EOA cost disallowances, they will proceed for review to the United States District Court for the District of Columbia. In its decision of October 21, 1981, the United States Court of Appeals for the District of Columbia concluded that the D.C. district court would properly have jurisdiction over the EOA claims if they were not resolved by this court. The EOA claims are clearly ones which do not require the fact-finding anticipated in a district court. Before the administrative law judge, both parties in this case put forth all their evidence and witnesses and neither party now suggests that it was denied a full and fair opportunity to present its case
 
 
 [9]
 This regulation succinctly states:
 Sections 97.230-97.243 set forth the program operation requirements for grantees under section 303. The utilization of funds under section 303 is conditioned upon adherence to the Act, the regulations under the Act and other applicable law.
 
 
 [29]
 C.F.R. sec. 97.230 (1975)