UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 94-1611

LEONARD R. FRIEDMAN, M.D.,

Plaintiff, Appellant,

v.

DONNA E. SHALALA, SECRETARY OF HEALTH AND HUMAN SERVICES, ET. AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, U.S. District Judge]

Before

Cyr, Circuit Judge,
Bownes, Senior Circuit Judge, and
Stahl, Circuit Judge.

Leonard R. Friedman, M.D., on brief pro se.
Donald K. Stern, United States Attorney, and Suzanne E. Durrell,
Assistant United States Attorney, on brief for appellee.

January 27, 1995

Per Curiam. Leonard Friedman is appealing the

district court's decision dismissing his case for mootness.

We affirm.

I. Background

We recite only briefly the pertinent facts. In

1991, Friedman sued various defendants, claiming that the

revocation of his medical license in Massachusetts in 1987

and his exclusion from Medicare provider rolls in 1990 had

been unlawfully effected. The district court stayed

proceedings pending the results of other state and federal

court actions involving the same parties. In October 1993,

the court approved the parties' stipulation of partial

dismissal. Pursuant to that stipulation, Friedman dismissed

with prejudice his claims against all defendants except his

claim against the Department of Health and Human Services

(HHS) for a declaratory judgment that HHS had wrongfully

excluded him from Medicare provider rolls in 1990.1



1. HHS excluded Friedman under 42 U.S.C. 1320a-7(b)(4)(A),
which permits exclusion of an individual "whose license to
provide health care has been revoked or suspended by any
State licensing authority . . . for reasons bearing on the
individual's . . . professional competence, professional
performance, or financial integrity." HHS based its
exclusion on New York's revocation of Friedman's medical
license. New York had based its revocation on Massachusetts'
determination that Friedman had engaged in "gross misconduct"
sufficient to warrant revocation of Friedman's medical
license in that state. Friedman's period of exclusion was to
end when either Massachusetts or New York reinstated his
license.

-2-

At Friedman's request, HHS reinstated Friedman as a

Medicare provider in November 1993. When HHS later answered

Friedman's complaint, it asserted that Friedman's

reinstatement had mooted his claim for relief and that the

action should be dismissed. The court agreed and dismissed

the action sua sponte.2

II. Discussion

We address two of Friedman's arguments on appeal.3

First, Friedman says that HHS is reasonably likely to exclude

him again since California revoked his medical license in

1990 and that any future exclusion by HHS would likely evade

judicial review because it would lapse before the court could

render a decision. Second, Friedman argues that his

exclusion has continuing collateral consequences that will



2. Friedman did not immediately appeal the order dismissing
his case, but filed a motion for relief from judgment under
Fed. R. Civ. P. 60(b), the denial of which he appealed.
Because his motion was filed within the time limit for filing
motions under Fed. R. Civ. P. 59(e), however, and challenged
the legal correctness of the court's decision that his action
was moot, we treat it as a timely Rule 59(e) motion and
assume, without deciding, that the dismissal of his action
for mootness is properly before us. See Perez-Perez v.
Popular Leasing Rental, Inc., 993 F.2d 281, 284-85 (1st Cir.
1993); Mariani-Giron v. Acevedo-Ruiz, 945 F.2d 1, 3 (1st Cir.
1991).

3. Other arguments he makes are without merit, e.g., that
the stipulation of partial dismissal and the court's failure
to revoke its stay order prior to Friedman's reinstatement
waived mootness, that evidence discovered in 1991 before
Friedman filed his suit qualified as new evidence justifying
relief from the court's judgment, and that the mootness
doctrine does not apply to judicial review of agency
decisions.

-3-

affect his reputation and his medical and legal careers. For

those reasons, Friedman claims that his request for

declaratory relief is not moot.

A. Capable of Repetition Yet Evading Review

We conclude that the capable of repetition yet

evading review exception to mootness does not apply. While a

one-year exclusion may well evade judicial review, it does

not seem at all likely that HHS will exclude Friedman on the

basis of California's revocation of his medical license.

At the time Friedman applied for reinstatement, the

California revocation clearly would have been a basis for

excluding Friedman from the Medicare program. See 42 U.S.C.

1320a-7(b)(4)(A), supra note 1. Yet HHS reinstated

Friedman in 1993, and so it must not have believed that the

1990 California license revocation would be grounds for

excluding Friedman. See 42 C.F.R. 1001.3002(a)(3) (HHS

"will" reinstate an excluded individual if, among other

things, it determines that there is "no additional basis"

under the statute for continuing the exclusion).4 Thus, the

fact that Friedman was reinstated shows that HHS would be



4. Friedman alleges that this regulation and others cited by
HHS in its brief were not in effect at the time he was
excluded, but does not allege that this and the other
regulations embody practices or policies that are different
from ones prevailing at the time of his exclusion. In
addition, we note that the regulations relating to the
reinstatement of excluded individuals became effective on
January 29, 1992, and so presumably applied to Friedman's
reinstatement in November 1993.

-4-

unlikely to use the California revocation to exclude Friedman

in the future. Moreover, excluding Friedman because of the

California revocation would arguably be an abuse of

discretion. California revoked Friedman's license because of

Massachusetts' revocation of his license; that is, California

based its license revocation on the same misconduct as had

New York. Because HHS based Friedman's exclusion on New

York's revocation of Friedman's license, excluding him

because of the California revocation would essentially

penalize Friedman twice for the same misconduct, a course of

action that we doubt HHS would undertake.

B. Collateral Consequences

The adverse collateral consequences to which

Friedman points do not suffice to avoid mootness in this

case. According to Friedman, overturning his exclusion would

relieve him of the stigma of having been excluded, ease his

admission to practice law in Massachusetts, and relieve him

of the obligation to explain the exclusion when he seeks

hospital staff privileges, affiliation with certain health

care entities, or licensure in other states.

Certainly, in some situations, adverse collateral

consequences such as those advanced here have been found to

avoid mootness. See, e.g., Kirkland v. National Mortgage

Network, Inc., 884 F.2d 1367, 1370 (11th Cir. 1989) (the

dismissal of an action did not moot an attorney's challenge

-5-

to a court's revocation of his admission pro hac vice for

failure to abide by promises made during settlement

negotiations; the "brand of disqualification on grounds of

dishonesty and bad faith could well hang over [plaintiff's]

name and career for years to come"); Kleiner v. First

National Bank of Atlanta, 751 F.2d 1193, 1200 n.14 (11th Cir.

1985) (the settlement of a class action did not moot

attorneys' challenge to their disqualification by the court

in part because counsel could be exposed to further sanctions

by the bar and their disqualification could have adverse

effects on their careers and public image) (alternative

holding); Miller v. Washington State Bar Ass'n, 679 F.2d

1313, 1316, 1318 (9th Cir. 1982) (an attorney could sue a

state bar association to expunge a letter of admonition from

his file since he would be required to explain the admonition

if he applied to the bar in other states or for judicial

appointments).

Here, however, it is not the HHS exclusion which

has tarnished Friedman's reputation, but the apparently valid

New York and Massachusetts licensing board decisions,5 which



5. Friedman apparently did not challenge the New York
decision in court. The Massachusetts Supreme Judicial Court
has upheld the Massachusetts decision. See Friedman v. Board
of Registration in Medicine, 561 N.E.2d 859 (Mass. 1990)
(substantial evidence supported the decision to revoke
Friedman's license for gross misconduct), cert. denied, 498
U.S. 1107 (1991); Friedman v. Board of Registration in
Medicine, 609 N.E.2d 1223 (Mass. 1993) (petition for relief
from license revocation was denied).

-6-

concluded that Friedman had engaged in gross professional

misconduct sufficient to warrant license revocation.

Consistent with the applicable statutory basis for exclusion,

HHS's letter notifying Friedman of his exclusion explained

that his exclusion was based on "the fact" that New York had

revoked his license and indicated that the issue in any

administrative hearing would be "whether your license was

revoked for reasons relating to your professional competence,

professional performance, or financial integrity." Since

Friedman's Medicare exclusion was based solely on the fact

that his license had been revoked, the exclusion effectively

signified only that New York had revoked Friedman's license

for reasons bearing on his professional competence or

performance. Compare 42 C.F.R. 1001.2007(a)(i) & (ii) (the

only issues before an ALJ in an exclusion hearing are whether

the basis for the imposition of the sanction exists and

whether the length of the exclusion is reasonable).6



6. This regulation became effective January 29, 1992, after
Friedman was excluded. Nonetheless, it was published as a
proposed regulation before Friedman's exclusion and
represents HHS's interpretation of its obligations in
exclusions such as Friedman's as of the time Friedman was
excluded. See 55 Fed. Reg. 12,206 (4/2/90) (explaining that
HHS's authority to exclude certain individuals, including
those whose state medical licenses have been revoked, is
"derivative" because "our ability to exclude derives from the
fact that another entity has imposed a sanction on the
individual or health care entity. [HHS] would not be
required to reestablish the factual or legal basis for such
underlying sanction.").

-7-

Although the exclusion resulted from the license revocation,

it conferred no additional stigma on Friedman.7

Moreover, the actual effect of the exclusion was

exclusively a financial one, as the letter notifying Friedman

of his exclusion made clear. Because of his exclusion,

neither Medicare nor certain federally-assisted state health

care programs (from which Friedman was also excluded) would

pay for services or items furnished to Friedman's patients.8



7. HHS's letter to Friedman notifying him of his exclusion
informed him that HHS would notify certain state agencies and
the public of his exclusion and of the reasons therefor. A
copy of the public notice of Friedman's exclusion is not
included in the record, but it apparently would have stated
that Friedman's exclusion would end when his license was
reinstated. See 42 U.S.C. 1320a-7(c)(3)(A) (the notice of
exclusion given to the excluded individual and to the public
shall specify the minimum period of exclusion). At the time
Friedman was reinstated, HHS was required to notify "those
agencies, groups, individuals, and others that were
originally notified of the exclusion" of Friedman's
reinstatement. See 42 C.F.R. 1001.3003(a)(4). Presumably,
therefore, public notice of Friedman's reinstatement was
given, although it is not clear whether the notice would have
given the reason for his reinstatement. Compare id. 
1001.134(a)(2) (a predecessor regulation to 1001.3003(a),
which provided for notice to the public of an excluded
individual's reinstatement). Assuming that the original
public notice of Friedman's exclusion had stigmatized
Friedman as a person who had lost his medical license for
reasons bearing on his professional performance or
competence, that stigma likely would have been erased to the
extent possible by the reinstatement notice implying, if not
stating outright, that he had regained his license.

8. The letter stated:

The effect of your exclusion from participation in the
Medicare and State health care programs is that no
payment will be made for any items or services (other
than an emergency item or service) furnished, ordered or
prescribed by you under the above-mentioned programs.

-8-

Regulations in effect at the time Friedman was reinstated

indicate that such payments would have resumed once he was

reinstated. See 42 C.F.R. 1001.1901(b) (payments under

Medicare and applicable state health care programs may not be

made unless and until an excluded individual is reinstated

into the Medicare program); id. 1001.3003(b) (with certain

exceptions apparently not applicable here, state health care

programs must reinstate an individual to such programs upon

notification by HHS that the individual has been reinstated

to the Medicare program). There is nothing in the present

record to suggest that reinstatement did not have this result

in Friedman's case.

Thus, if Friedman should seek some future

affiliation with a hospital or other health care entity, the

decision to grant or deny him affiliation would not be

affected by the entity's inability to receive Medicare or

applicable state program payments for care given to

Friedman's patients. On the other hand, if hospitals, health

care entities, state medical licensing boards, or any boards

of bar examiners are concerned about Friedman's character or

professional competence or performance, their response to any

future application of his would be affected predominantly, if



Furthermore, payment will not be made to any entity in
which you are serving as an employee, administrator,
operator, or in any other capacity for any services that
you furnish, order or prescribe on or after the
effective date of this exclusion.

-9-

not exclusively, by the apparently valid state decisions

revoking his medical license. While Friedman may have

expected the district court to review the Massachusetts

license revocation proceedings in this suit, its review was

of necessity limited to the exclusion decision itself which

did not encompass the state proceedings. As noted above, the

parties stipulated to dismissal of Friedman's claims against

all defendants with the exception of his claim against HHS

relating to his Medicare exclusion. Presumably, the

jurisdictional basis for that claim would be 42 U.S.C.

1320a-7(f)(1), which provides for judicial review of final

HHS exclusion decisions. Under HHS Departmental Appeals

Board precedent in effect at the time of Friedman's

exclusion, excluded individuals could not challenge their

exclusion by collaterally attacking the underlying state

license revocation proceedings. Citing that precedent, both

the administrative law judge and the Departmental Appeals

Board rejected Friedman's attempt to collaterally attack the

Massachusetts and New York license revocation proceedings.

Thus, the validity of the underlying state proceedings was

never an issue in Friedman's exclusion proceedings. The

scope of the proceedings below having been confined to the

determination whether the statute applied to Friedman,9



9. Friedman had alleged that the statute was being applied
retroactively to him since Massachusetts had rendered its
licensing decision before the statute became effective.

-10-

whether Friedman's license had been revoked by a state

licensing authority for the statutorily prescribed reasons,

and whether the period of exclusion was reasonable, the

district court's review of the decision excluding Friedman

would be likewise constrained. Cf. Travers v. Sullivan, 801

F. Supp. 395, 403 (E.D. Wash. 1992) (where HHS excluded an

individual on the basis of a prior state conviction for a

program-related offense, it was "not necessary or proper for

the court to delve into the facts surrounding the

conviction"; the court's role under 1320a-7(f) was not to

review the validity of the underlying conviction but to

review the validity of the exclusion), aff'd, 20 F.3d 993,

998 (1994).10

Under these circumstances, we conclude that this

action is moot. See Florida Farmworkers Council, Inc. v.

Marshall, 710 F.2d 721, 731 (11th Cir. 1983) (the court

determined that expiration of plaintiff's debarment had



10. HHS's policy barring collateral attack on state license
revocation proceedings and limiting the nature of the issues
addressed in exclusion proceedings is now codified in
regulations that have been expressly made binding on federal
courts. See 42 C.F.R. 1001.2007(d) (prohibiting collateral
attacks on the underlying state determinations which form a
basis for exclusion); id. 1001.2007(a)(i) & (ii) (the only
issues before an administrative law judge in an exclusion
hearing are whether the basis for excluding an individual
exists and whether the length of the exclusion is
reasonable); id. 1001.1(b) (these regulations are
applicable to and binding on federal courts in reviewing
exclusions imposed by HHS) (this latter regulation became
effective January 22, 1993).

-11-

mooted its action challenging the debarment despite

plaintiff's claim of stigma because the court had upheld the

costs disallowances that had caused the debarment; it

explained that it could not discern any additional stigma

created by the debarment and that the debarment had not

prevented plaintiff from receiving substantial federal funds,

apparently after the debarment had ended).

Affirmed. 

-12-